IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Arena Energy, LLC, § | |
| Arena Offshore, LP, § | |
|     *Plaintiffs,* § | |
| v. § | Civil Action. No. 4:25-cv-641 |
| Maritech Resources, LLC, § | Jury Demanded |
| Tetra Technologies, Inc., § | |
|     *Defendants.* § | |

## Complaint

Plaintiffs Arena Energy, LLC and Arena Offshore, LP (together "Arena") file this Original Complaint against defendants Maritech Resources, LLC formerly Maritech Resources, Inc. ("Maritech") and Tetra Technologies, Inc. ("Tetra"). Maritech and Tetra breached their contractual obligations and refused to indemnify Arena for costs Arena has incurred and will continue to incur in connection with decommissioning a toppled oil and gas platform in the Gulf of Mexico.

## I.
## Parties

1. Arena Energy, LLC is a limited liability company organized under Delaware law and has its principal office located at 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380.

2. Arena Offshore, LP is a limited partnership organized under Delaware law and has its principal office located at 2103 Research Forest Drive, Suite 200, The Woodlands, Texas 77380.

3. Maritech is a limited liability company organized under Delaware law, has its principal office in Roanoke, Virginia, and may be served with process by serving its registered agent in the State of Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

4. Tetra is a Delaware corporation, has its principal office in The Woodlands, Texas, and may be served with process by serving its registered agent in the State of Texas, Capitol Corporate Services, Inc., 1501 South MoPac Expressway, Suite 220, Austin, Texas 78746.

II.
Jurisdiction and Venue

5. This Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331 and under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1).

6. This Court has personal jurisdiction over Maritech. Maritech regularly conducts business in this jurisdiction. Maritech had its principal place of business in The Woodlands, Texas from at least 2002 to 2018.

7. This Court has personal jurisdiction over Tetra. Tetra regularly conducts business in this jurisdiction. Tetra has its principal place of business in The Woodlands, Texas.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) and under OCSLA, 43 U.S.C. § 1349(b)(1).

III.
Maritech and Tetra Breached Their
Decommissioning and Indemnity Obligations to Arena

9. Maritech and Tetra breached their contractual and other legal obligations to perform the work and pay the costs of decommissioning an oil and gas platform in the Gulf of Mexico that toppled during September 2008's Hurricane Ike. As a result of Maritech's and Tetra's breach of their obligations, the Bureau of Safety and Environmental Enforcement ("BSEE") turned to Arena to conduct the decommissioning. Arena does not have an ownership interest in the platform. Arena holds lease operating rights in the subsurface area beneath the platform.

10. Maritech and Tetra breached their contractual obligation to indemnify Arena for decommissioning costs Arena already has incurred in response to BSEE requirements. Arena

2

formally demanded indemnification from Maritech and Tetra, but they repudiated their obligation to indemnify Arena for decommissioning costs that Arena has incurred and continues to incur.

11.     The platform at issue is "Platform A" on East Cameron Block 328, OSC-G 10638 ("EC Block 328") in the Gulf of Mexico, offshore the State of Louisiana. In 1994, EC Block 328's then-operator of record Zilkha Energy Company installed Platform A, a large structure that used to be located above the water line and housed equipment for drilling, processing, and producing oil. In September 2008, Platform A toppled over during Hurricane Ike.

Maritech and Tetra Admitted They<br>Retain Platform A's Decommissioning Obligations

12.     Before and after Arena acquired its operating rights interests in EC Block 328, Maritech and Tetra acknowledged their operational and financial responsibilities for decommissioning Platform A.

13.     Maritech purchased certain assets from two affiliated companies called Dominion Exploration & Production, Inc. and Dominion Oklahoma Texas Exploration & Production, Inc. (together "Dominion") and from a company called CNG Pipeline Company ("CNG") pursuant to a November 21, 2002 Purchase and Sale Agreement (the "2002 Maritech/Dominion/CNG PSA"). The assets Maritech purchased included the operating rights in EC Block 328. In § 7.03(a) of the 2002 Maritech/Dominion/CNG PSA, Buyer Maritech:

> EXPRESSLY COVENANTS AND AGREES TO ASSUME AND FULLY COMPLY WITH (I) ALL LIABILITIES AND OBLIGATIONS WITH RESPECT TO PLUGGING AND ABANDONMENT, INCLUDING, WITHOUT LIMITATION, ALL PLUGGING, REPLUGGING, ABANDONMENT, REMOVAL, DISPOSAL OR RESTORATION ASSOCIATED WITH THE ASSETS (WHETHER DRILLED OR PLACED ON AN ASSET PRIOR TO OR AFTER THE EFFECTIVE DATE), THE REMOVAL AND CAPPING OF ALL ASSOCIATED FLOWLINES, THE RESTORATION OF THE SURFACE, SITE CLEARANCE AND ANY DISPOSAL OF RELATED WASTE MATERIALS . . . , ALL IN ACCORDANCE WITH APPLICABLE FEDERAL, STATE AND LOCAL LAWS AND THE TERMS AND CONDITIONS OF THE LEASES AND ASSOCIATED CONTRACTS . . . .

14. The 2002 Maritech/Dominion/CNG PSA also imposed those obligations on Maritech's then-parent company Tetra, and Tetra assumed and agreed to those obligations. From 1999 to 2018, Maritech was a wholly-owned subsidiary of Tetra.

15. In § 9.02(j) of the 2002 Maritech/Dominion/CNG PSA, Maritech had the mandatory "Closing Obligation" to "deliver to Seller a corporate guarantee executed by TETRA Technologies, Inc. in a form mutually acceptable to the parties." The purpose of Tetra's guarantee was to secure and assure the completion of Maritech's obligations, including its decommissioning and other obligations under § 7.03(a).

16. Michael A. Ackal, Jr. signed the 2002 Maritech/Dominion/CNG PSA on behalf of all Sellers. Ackal signed as "Agent and Attorney-in-Fact" for the two Dominion entities. Ackal signed as "Authorized Representative" of CNG.

17. G.M. "Matt" McCarroll signed the 2002 Maritech/Dominion/CNG PSA on behalf of Buyer Maritech as "Senior Vice President." According to his LinkedIn profile, McCarroll was *Tetra's* "Senior Vice President" from 2001 to 2007 and simultaneously was *Maritech's* President. McCarroll's dual and simultaneous executive roles at Maritech and Tetra ensured that Tetra was aware of the 2002 Maritech/Dominion/CNG PSA, ensured that Tetra was aware of Maritech's obligations, and ensured that Tetra was aware of and accepted Tetra's own obligations including its "corporate guarantee" obligations with respect to plugging and abandonment and other decommissioning obligations.

<u>Arena Acquired a 50% Operating Interest in EC Block 328</u>

18. On November 23, 2004, Maritech sold 50% of the operating rights in EC Block 328 to Arena pursuant to a Participation and Acquisition Agreement (the "2004 Arena/Maritech PAA"). Maritech and Tetra remained liable for "all plugging, abandoning and decommissioning

4

costs and responsibilities" for wells, platforms, facilities, and pipelines existing on EC Block 328 at the time of the 2004 Arena/Maritech PAA. In ¶ 13 of the 2004 Arena/Maritech PAA, the parties agreed that:

> **P&A and Indemnity.** Notwithstanding anything herein to the contrary, Maritech shall retain and agrees to indemnify, and hold Arena harmless from all plugging, abandoning and decommissioning costs and responsibilities concerning the wells, platforms, facilities, equipment and pipelines currently located on the Block and the plugging and abandonment and decommissioning of property that is placed on the Block pursuant to this Agreement shall be governed by the OA.

19.     In ¶ 23, the parties agreed that Maritech's Affiliates including Tetra were bound by the terms of the 2004 Arena/Maritech PAA:

> **Binding on Affiliates.** This Agreement shall be binding on the Affiliates of the Parties and for the purposes of this agreement, the terms "Arena" and "Maritech" shall include Affiliates of said entities and Affiliates means any company or legal entity which (a) controls either directly or indirectly a party, or (b) is controlled directly or indirectly by a party, or (c) is directly or indirectly controlled by a company or entity which directly or indirectly controls a party. "Control" means the right to directly or indirectly exercise 50% or more of the voting rights of an entity in the appointment of officers or directors or senior managers, or the exercise of ultimate control.

20.     In ¶ 22 of the 2004 Arena/Maritech PAA, Maritech listed the address of Tetra's principal offices in The Woodlands, Texas as the address for providing contract notice to Maritech.

21.     Maritech and Tetra executive McCarroll signed the 2004 Arena/Maritech PAA on behalf of Maritech, signed on Maritech's signature block, and this time listed his title as "President." In 2004, McCarroll simultaneously served as Senior Vice President of Tetra.

22.     In September 2008, Hurricane Ike downed Platform A. The platform toppled into the water on its side, impaling the ends of the decks 10 to 18 feet into the mud. The force of Platform A's impact with the seabed broke much of the deck equipment free.

Maritech's Asset Sale to Tana

23. On April 1, 2011, Maritech sold the majority of its company assets to Tana Exploration Company LLC ("Tana") pursuant to a Purchase and Sale Agreement (the "2011 Tana/Maritech PSA"). Among the assets Maritech sold to Tana was Maritech's remaining 50% operating rights in EC Block 328.

24. Exhibit 1.2(N) of the 2011 Tana/Maritech PSA is titled "EC 328 'A' Platform P&A Obligations," and provides that Maritech retained "all of its right, title and interest in the EC 328 'A' Platform toppled platform located in East Cameron, Block 328."

25. Exhibit 15.2(A) to the 2011 Tana/Maritech PSA listed the "Excluded Assets" that Maritech retained and that were not assigned to Tana. One such "Excluded Asset" that Maritech retained was "all obligations to plug, abandon and remove the East Cameron 328 A Platform (together with all obligations to plug, abandon and/or remove all wells, equipment, pipeline segments, subsurface debris and obstructions related thereto, as set forth on Exhibit 1.2(N) of the Purchase and Sale Agreement, the 'EC 328 A Platform P&A Obligations')."

26. The 2011 Tana/Maritech PSA listed Maritech as "Seller" and Tetra as "Seller's Parent." The 2011 Tana/Maritech PSA provided in § 2.2 that "If the Board of Directors of Seller's Parent fails or refuses to approve this Agreement and the transactions contemplated hereunder on or before April 8, 2011, then this Agreement shall terminate and in such event, Seller and Buyer shall have no further obligation(s) to one another." The 2011 Tana/Maritech PSA included a signature block for Tetra, and Tetra's then-President and CEO Stuart M. Brightman signed the agreement. Brightman served as Tetra's President from 2009 to 2018 and served as Tetra's CEO from 2009 to 2019. Maritech listed Brightman as its President in the qualification paperwork that Maritech filed with BSEE most recently on March 3, 2022.

6

Arena Acquired a 100% Operating Interest in EC Block 328

27. In November 2004, Arena had acquired 50% of the operating rights in EC Block 328 from Maritech pursuant to the 2004 Arena/Maritech PAA, under which Maritech and Tetra remained liable for "all plugging, abandoning and decommissioning costs and responsibilities" related to Platform A.

28. Nearly 17 years later, on July 1, 2021, Arena acquired the other 50% operating interest in EC Block 328 from Tana pursuant to a Purchase and Sale Agreement (the "2021 Arena/Tana PSA").

29. In ¶ 13 of the 2021 Arena/Tana PSA, the parties acknowledged that, under the 2011 Tana/Maritech PSA, "Maritech retained 'all of its right, title, and interest in the EC 328 "A" Platform toppled platform located in East Cameron Block 328' and retained 'all obligations to plug, abandon and remove the East Cameron 328 A Platform (together with all obligations to plug, abandon and/or remove all wells, equipment, pipeline segments, surface debris and obstructions related thereto, as set forth on Exhibit "B" attached hereto and made a part hereof (the "**EC 328 'A' Platform Liability**").'" (Emphasis in original). Arena and Tana attached as Exhibit B to their 2021 Arena/Tana PSA a copy of the 2011 Tana/Maritech PSA's Exhibit 1.2(N).

30. Since July 2021, Arena has owned 100% of the operating rights to EC Block 328. Maritech and its Affiliates including Tetra retained (and still retain) all plugging, abandonment and other decommissioning obligations for EC Block 328's Platform A.

Tetra Sold Maritech to Orinoco

31. On February 28, 2018, Maritech and Tetra sold Maritech for $47 million to a company called Orinoco Natural Resources, LLC ("Orinoco"). Maritech and Tetra conveyed

Maritech's active oil, gas and mineral leases and other properties to Orinoco pursuant to an Asset Purchase and Sale Agreement (the "2018 Orinoco/Maritech PSA").

32. Similar to the 2011 Tana/Maritech PSA, the 2018 Orinoco/Maritech PSA listed Maritech as "Seller" and Tetra as "Seller Parent." The 2018 Orinoco/Maritech PSA in § 6.4 required Seller Maritech to deliver to Buyer Orinoco a Bonding Agreement executed by Seller Parent Tetra. Stuart M. Brightman signed the 2018 Orinoco/Maritech PSA on Seller Maritech's behalf as Maritech's President. Brightman also signed the 2018 Orinoco/Maritech PSA on Seller Parent Tetra's behalf as Tetra's CEO.

33. On February 28, 2018, Tetra's subsidiary, Tetra Applied Technologies, LLC ("Tetra Applied"), sold to Orinoco all of the outstanding membership interests of Maritech pursuant to a Membership Interest Purchase and Sale Agreement. The parties listed Tetra Applied as "Seller," Maritech as "Company," and Tetra as "TETRA Parent." Brightman signed on Maritech's behalf as Maritech's President. Brightman signed on Tetra Parent's behalf as Tetra's CEO.

34. On February 28, 2018, Tetra and Orinoco signed a Bonding Agreement in which Orinoco agreed to provide Tetra with $47 million in surety bonds to secure the satisfaction of Maritech's asset retirement obligations. In Exhibit A, the parties listed $7,853,817 in abandonment obligations for "EC 328 OCS-G 10638 Platform A Removal" (Bond 10) and $341,995 in obligations for "EC 328 OCS-G 10638 Platform A Site Clearance" (Bond 11). Tetra's negotiation and execution of these two bonds confirms Tetra's knowledge of its own obligation to decommission Platform A if Maritech failed to do so.

Maritech and Tetra Breached Their Decommissioning Obligations

35. On June 14, 2021, BSEE ordered Maritech to decommission Platform A by June 30, 2022. BSEE noted that Hurricane Ike had toppled the platform in 2008 and ordered Maritech—Platform A's designated operator of record—to remove the platform by the deadline.

36. Maritech assured Arena it would comply. Maritech breached. Maritech did not remove Platform A by BSEE's June 2022 deadline. It still has not removed Platform A.

37. On July 29, 2022, BSEE issued an Incident of Non-Compliance ("INC") to Maritech for its failure to decommission Platform A. BSEE imposed a June 30, 2023 deadline to correct the INC.

38. On July 29, 2022, BSEE also issued a Decommissioning Order to Arena and EC Block 328's then-record title owner Fieldwood Energy LLC. BSEE set a June 30, 2023 deadline to remove Platform A.[1] On August 1, 2022, Arena emailed Maritech about BSEE's order and asked how Maritech intended to respond. Maritech responded to Arena that it would comply with Maritech's decommissioning obligations and would do so by BSEE's June 30, 2023 deadline.

39. On March 22, 2023, Maritech, Arena, and now-record title owner GOM Shelf met with BSEE to discuss BSEE's Decommissioning Orders. Maritech led the discussion, providing BSEE with surveys of Platform A, and updating BSEE on the platform's status. Maritech again acknowledged to BSEE and Arena that Maritech was obligated to decommission Platform A and again represented that it would comply with its decommissioning obligations. Maritech did not comply, did not meet its deadline to comply, and still has not complied with its obligations.

---

[1] On November 30, 2022, Fieldwood Energy LLC assigned its record title interest ownership in the EC 328 lease, including all rights and obligations related to Platform A, to GOM Shelf LLC ("GOM Shelf"). On December 7, 2022, BSEE issued a Decommissioning Order to GOM Shelf with the same June 30, 2023 deadline.

9

40. On June 29, 2023, one day before its compliance deadline, Maritech formally asked BSEE for an extension of its decommissioning deadline. Maritech proposed a schedule for decommissioning Platform A, with a completion date of September 2024. In reliance on Maritech's commitments and representations that it was capable of performing and would perform its decommissioning obligations, Arena and GOM Shelf supported Maritech's request.

41. On August 17, 2023, BSEE granted Maritech's request and extended the decommissioning deadline to September 30, 2024. BSEE noted that "Since it has been approximately 2 years since the initial Order was issued with no progress to date, this is the **final extension** that will be given to remove Platform A." (Emphasis in original). BSEE reminded the parties that, "as current lessee and Operating Rights Interest owner, GOM Shelf LLC and Arena are jointly and severally liable for decommissioning and as such, are responsible for ensuring your operator, Maritech, is moving forward in an expedited manner."

Maritech and Tetra Breached Their Obligation to Indemnify Arena

42. On June 28, 2023, Arena sent written notice to Maritech and Tetra and reminded them of their duty to indemnify Arena for decommissioning costs related to Platform A. Arena cited ¶¶ 13 and 23 of the 2004 Arena/Maritech PAA under which Maritech and its Affiliates including Tetra were contractually obligated to indemnify Arena for all decommissioning costs and responsibilities concerning Platform A. Arena wrote:

> Arena hereby makes demand upon Maritech and Tetra Technologies, Inc. to fully indemnify Arena for any and all costs, responsibilities and losses related to the decommissioning of the EC 328 "A" Platform, including, but not limited to, the Decommissioning Order, any Incidents of Non-Compliance ("INCs"), and any resulting civil penalties.

43. On July 23, 2023, Tetra responded to Arena, denied its indemnification agreement, and wrote that "TETRA's view is that it is not obligated under the PAA to indemnify Arena." On January 25, 2024, Arena told Tetra in writing that:

> In the event Maritech Resources does not fully and completely honor its obligation to retain, and to indemnify and hold Arena harmless for, "all decommissioning costs and responsibilities" related to the EC 328 'A' Platform, then Arena will move forward to enforce this same obligation against Tetra in accordance with the Participation Agreement.

44. On September 26, 2024—after Maritech flouted BSEE's final deadline to decommission Platform A—Arena sent another written demand for indemnification to Maritech and Tetra, and wrote:

> Maritech has not complied with the decommissioning deadlines set out in the Decommissioning Orders. Due to Maritech's non-compliance and breach of its obligations to Arena, BSEE is now actively enforcing the Decommissioning Orders against Arena. BSEE is requiring Arena to incur costs to decommission the EC 328 "A" Platform.
>
> Exhibit B is a statement of costs incurred by Arena to date in responding to BSEE's Decommissioning Orders and enforcement efforts. The statement includes Arena's anticipated costs through selection of a proposed decommissioning plan. Consistent with Maritech's and Tetra's indemnity obligations, Arena renews its demands for the immediate reimbursement of such incurred costs. Arena will continue to update the statement of costs as additional costs are incurred and will pass along the updated statement of costs accordingly.

45. In Exhibit B to its September 26, 2024 letter, Arena provided Maritech and Tetra with details on over $1 million in costs that Arena had incurred and anticipated incurring to decommission Platform A. Arena noted that, as of August 15, 2024, it had incurred $6,817.25 in costs for consulting, environmental, and structural engineering services related to Platform A decommissioning. Arena listed $1,078,313 in costs it anticipated incurring to complete certain additional decommissioning steps, including an underwater survey of Platform A, a preliminary feasibility study, and an environmental and safety survey. These costs include only preliminary survey costs, not several million dollars more in other decommissioning and removal costs.

46. On October 23, 2024, Tetra again disavowed any Platform A decommissioning obligations and told Arena that "TETRA's position - as outlined in its July 23, 2023, response to Arena's June 28, 2023, EC 328 Indemnity Demand - remains unchanged. . . . Accordingly,

11

TETRA does not intend to honor Arena's indemnity demands at this time, for all the reasons previously outlined."

47.     On January 16, 2025, Arena wrote to Maritech and Tetra:

> At all times during Arena's development of its EC 328 assets, Arena has fully relied upon Maritech's and Tetra's promises, made at the time of our acquisition, that your companies would complete this decommissioning work. . . . We note that Maritech has never formally responded to Arena's claims for indemnity or denied its obligations to complete the EC 328 "A" platform decommissioning. Maritech is simply failing to complete the work, which triggers Tetra's obligations to do so.

48.     In its January 16, 2025 letter, Arena wrote that BSEE "has lost confidence that Maritech will complete its decommissioning obligations and BSEE is now seeking to enforce those obligations on Arena, including operatorship of the decommissioning work. We anticipate that the cost of decommissioning down EC 328 'A' platform could exceed Twenty-Million U.S. Dollars ($20,000,000.00)." Arena proposed that the parties meet to explore a business solution and wrote:

> We are aware that Tetra has been issued bonds to secure the performance of Maritech's decommissioning work for the EC 328 "A" platform and other obligations (see Appendix B). Given Maritech's failure to perform the required decommissioning work, these bonds are critical to any resolution of this dispute.

49.     Arena attached as Appendix B to its January 16, 2025 letter a copy of the 2018 Bonding Agreement between Tetra and Orinoco.

50.     On January 24, 2025, Tetra rejected Arena's proposal. Tetra reiterated its repudiation, again defied its contractual promises to Arena, and wrote:

> TETRA reiterates its previous position that it has no obligations to Arena with respect to the East Cameron 328 "A" Platform.
>
> Accordingly, TETRA does not believe that its participation in a meeting to "explore a business solution" for the subject decommissioning obligations would be constructive at this time.
>
> Lastly, Arena indicates the costs of decommissioning the EC 328 "A" Platform could exceed $20,000,000.00 without any substantiation. If there is any documentation supporting this cost estimate, please provide.

12

51. Arena expects to expend several million dollars to decommission Platform A. In accordance with the 2004 Arena/Maritech PAA, Arena is entitled to indemnification from Maritech and Tetra for "all plugging, abandoning and decommissioning costs and responsibilities concerning" Platform A that Arena incurs.

IV.
Causes of Action

52. All conditions precedent to Arena's claims for relief have been performed, have occurred, or have been satisfied.

Count 1—Breach of Contract Against Maritech

53. Arena incorporates the allegations above.

54. The 2004 Arena/Maritech PAA is a valid and binding contract. Maritech is bound by the terms of the 2004 Arena/Maritech PAA.

55. Maritech breached and continues to breach the 2004 Arena/Maritech PAA by not fulfilling its decommissioning obligations for Platform A and by refusing to indemnify Arena for the costs it has incurred and will continue to incur in decommissioning Platform A.

56. As a proximate result of Maritech's breaches, Arena has suffered and continues to suffer damages.

57. Maritech is liable to Arena for damages, pursuant to La. Civ. Code art. 1994, which provides that "An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance."

Count 2—Breach of Contract Against Tetra

58. Arena incorporates the allegations above.

59. The 2004 Arena/Maritech PAA is a valid and binding contract.

13

60. When the parties executed the 2004 Arena/Maritech PAA, Tetra was an "Affiliate" of Maritech as defined by the 2004 Arena/Maritech PAA. Tetra is bound by the terms of the 2004 Arena/Maritech PAA.

61. Tetra breached and continues to breach the 2004 Arena/Maritech PAA by not fulfilling its decommissioning obligations for Platform A and by refusing to indemnify Arena for the costs it has incurred and will continue to incur in decommissioning Platform A.

62. As a proximate result of Tetra's breaches, Arena has suffered and continues to suffer damages.

63. Tetra is liable to Arena for damages, pursuant to La. Civ. Code art. 1994, which provides that "An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance."

Count 3—Open Account Against Maritech

64. Arena incorporates the allegations above.

65. Despite demand from Arena, Maritech has not paid the balance due to Arena for indemnification of Platform A decommissioning costs.

66. More than 30 days have elapsed since Arena mailed its demand to Maritech, which set forth the amount owed and included an itemized statement of costs.

67. Maritech is liable to Arena for the unpaid balance as well as reasonable attorneys' fees in bringing this action, pursuant to La. Rev. Stat. § 9:2781, which provides that "When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant."

Count 4—Open Account Against Tetra

68. Arena incorporates the allegations above.

69. Despite demand from Arena, Tetra has not paid the balance due to Arena for indemnification of Platform A decommissioning costs.

70. More than 30 days have elapsed since Arena mailed its demand to Tetra, which set forth the amount owed and included an itemized statement of costs.

71. Tetra is liable to Arena for the unpaid balance as well as reasonable attorneys' fees in bringing this action, pursuant to La. Rev. Stat. § 9:2781, which provides that "When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant."

Count 5—Declaratory Judgment

72. Arena incorporates the allegations above.

73. Tetra refused Arena's demand for indemnification based on its claim that Tetra is not Maritech's "Affiliate" under the 2004 Arena/Maritech PAA and is not otherwise bound by the terms of the 2004 Arena/Maritech PAA.

74. Interpretation of the 2004 Arena/Maritech PAA affects Arena's indemnification rights. Arena is consequently an interested party.

75. A justiciable controversy exists between Arena and Tetra regarding the interpretation of the 2004 Arena/Maritech PAA. Entry of a declaratory judgment pursuant to La. Code Civ. Proc. art. 1872 and 28 U.S.C. § 2201 is necessary and proper to resolve this controversy. La. Code Civ. Proc. art. 1872 provides: "A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected

15

by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

76. Arena requests an award of reasonable attorneys' fees in bringing this action pursuant to La. Code Civ. Proc. art. 1878(A), which provides that "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper."

## V.
## Jury Demand

77. Arena demands a jury trial.

## VI.
## Request for Relief

78. Arena asks that the Court award final judgment in favor of Arena and against Maritech and Tetra including:

    a. Actual damages,

    b. A declaration that Tetra is bound by the terms of the 2004 Arena/Maritech PAA, including by the indemnification obligations in ¶ 13, and is liable to Arena for any and all decommissioning costs Arena may incur concerning Platform A,

    c. Reasonable and necessary attorneys' fees in accordance with La. Rev. Stat. § 9:2781 and La. Code Civ. Proc. art. 1878(A), and

    d. All other and further relief, legal and equitable, to which Arena is entitled.

Dated: February 13, 2025

Respectfully submitted,

/s/ *Geoffrey L. Harrison*
Geoffrey L. Harrison
gharrison@susmangodfrey.com
State Bar No. 00785947
S.D. Admissions No. 16690
Richard W. Hess
rhess@susmangodfrey.com
State Bar No. 24046070
S.D. Admissions No. 605712
Rebecca Scribner
*Application for admission forthcoming*
bscribner@susmangodfrey.com
Minnesota State Bar No. 0504490
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, #5100
Houston, TX 77002
Telephone: (713) 653-7807
Facsimile: (713) 654-6666

*Counsel for Plaintiffs*